WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David V. Cavan,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Robert Maron, et al.,<br><br>　　　　　Defendants. | No. CV-15-02586-PHX-PGR<br><br>**ORDER** |

The Court has before it Defendants' Motion to Dismiss Counts I through VI of Plaintiff's Complaint for Failure to State a Claim Pursuant to Rule 12(b)(6) and 9(b) (Doc. 15), Defendants' Request for Judicial Notice (Doc. 16), and Defendants' Motion for Authorization to File Exhibits to Maron Declaration Under Seal (Doc. 17). The Court will grant in part and deny in part the motion to dismiss, will grant the request for judicial notice, and will deny the motion to file under seal.[1]

**Background**

According to the Complaint,[2] Plaintiff, David Cavan, and Defendants, Robert

---

[1] The Court finds that oral argument would not assist in resolving this matter and accordingly finds the pending motions suitable for decision without oral argument. *See* LRCiv 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

[2] In ruling on the motion to dismiss, the Court "accept[s] all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Maron and Robert Maron Incorporated ("RMI"), entered into an agreement in July 2007 (the "initial agreement") under which Cavan agreed to purchase two rare watches from Defendants: a Patek Philippe Ref 3449 ("Patek 3449") for $1,800,000; and a Patek Philippe Ref 2523 ("Patek 2523") for $2,100,000; and Defendants agreed to accept eighteen watches owned by Cavan, for a value of $2,295,000, to be credited towards the purchase price of the two rare watches. (Doc. 1 at 2-3.) Defendants subsequently provided an additional discount of $150,000 towards the purchase price of the two watches and Cavan made an additional payment of $150,000. (*Id.* at 3.) This left the remaining balance due from Cavan towards the purchase of the two rare watches at $1,304,000 as of September 2010. (*Id.*)

Defendants did not deliver either the Patek 3449 or the Patek 2523 to Cavan and Cavan alleges that Defendants sold one or both of these watches to another purchaser. (*Id.*) In October 2011, Cavan requested Defendants return to him the eighteen watches and his $150,000 payment. (*Id.*)

In December 2011, Maron told Cavan that Defendants had a different rare watch, a Patek Philippe Ref 2449J 18K 1st Series ("Patek 2449J") worth over $2,000,000. (*Id.* at 3-4.) Cavan and Defendants then entered into an agreement (the "modification agreement") under which Cavan would receive the Patek 2449J, rather than the Patek 3449 and the Patek 2523, in consideration for the eighteen watches and $150,000 Cavan had previously delivered to Defendants. The modification agreement was evidenced by a writing signed by Cavan and Maron in December 2011, and provided that the Patek 2449J was to be delivered to Cavan on or before January 20, 2012. (*Id.* at 4; *see* Doc. 19-1.)[3]

On or before January 20, 2012, Defendants delivered to Cavan a Patek 2449J watch. More than three years later, in April 2015, Cavan first became aware that the

---

[3] Defendants have requested the Court take judicial notice of the initial agreement (Doc. 19) and the modification agreement (Doc. 19-1), both of which are referenced in the Complaint. Cavan has not opposed the request. The Court will, accordingly, grant Defendants' Request for Judicial Notice (Doc. 16).

- 2 -

1 Patek 2449J may not have the original dial, so he had the watch examined and evaluated
2 by a watch expert. (*Id.*). In a written report dated June 26, 2015, the expert confirmed
3 that the original dial on the Patek 2449J had been replaced with an inferior dial. The
4 Patek 2449J with the replaced dial is worth significantly less than the Patek 2449J with
5 the original dial that had been promised under the modification agreement. (*Id.*)

6 In September 2015, Cavan had a watch broker contact Defendants on Cavan's
7 behalf. The broker informed Defendants that the Patek 2449J did not have the original
8 Patek 2449J dial. Maron told the broker that he (Maron) was not sure what had happened
9 but that he (Maron) would "take care of it" and replace the dial on the delivered watch
10 with the original Patek 2449J dial. (*Id.*) In November 2015, Maron admitted he had
11 switched the dial and, again, acknowledged he and RMI were responsible for delivering
12 the original Patek 2449J dial to Cavan and promised to do so. (*Id.*) Defendants did not
13 deliver the original Patek 2449J dial to Cavan and have not returned Cavan's eighteen
14 watches or returned any money to Cavan. (*Id.*)

15 On December 21, 2015, Cavan filed this action against Defendants, bringing
16 claims for breach of contract, breach of the covenant of good faith and fair dealing,
17 breach of fiduciary duty, negligent misrepresentation, fraud, and unjust enrichment.
18 (Doc. 1 at 5-8.) Defendants have moved to dismiss the Complaint. (Doc. 15.)

19 **Discussion**

20 **A.     Choice of Law[4]**

21 The parties disagree on the law applicable to this case, with Defendants arguing
22 that California law applies (Doc. 15 at 15-16), and Cavan arguing that Arizona law
23 applies (Doc. 24 at 5-6). Because the case is in this court based on diversity jurisdiction,
24 the Court must apply Arizona's choice of law provisions to resolve this conflict. *See*
25 *Waggoner v. Snow*, 991 F.2d 1501, 1506 (9th Cir. 1993). In a contract action, Arizona

---

[4] In deciding the choice of law issue, the Court has considered the declarations of Cavan (Doc. 24-1) and Maron (Doc. 18), and the exhibits to Maron's Declaration (Docs. 19, 19-1), in addition to the Complaint (Doc. 1).

courts follow the Restatement (Second) of Conflict of Laws ("Restatement") to determine the applicable law. *Swanson v. The Image Bank, Inc.*, 77 P.3d 439, 441 (Ariz. 2003); *Cardon v. Cotton Lane Holdings, Inc.*, 841 P.2d 198, 202 (Ariz. 1992); *see Bobbitt v. Milberg LLP*, 801 F.3d 1066, 1070 (9th Cir. 2015).

Under the Restatement, the Court is to apply the law "of the state having the most significant relationship to the parties and the transaction." *Cardon*, 841 P.2d at 202 (citing Restatement § 188). To determine whether Arizona or California has the most significant contacts to the parties and transactions, the Court considers (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the residence, nationality, place of incorporation, and place of business of the parties. *See* Restatement § 188. "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.* Further, if the place of negotiation and the place of performance are in the same state, the local law of that state will usually be applied (with exceptions inapplicable to the present case). *See id.*

In the present case, a fair reading of the Complaint demonstrates that the initial agreement was negotiated and executed in July 2007 in Phoenix, Arizona. (Doc. 1 at 2 ("On or around July 6, 2007, at a face to face meeting in Phoenix, Arizona, Cavan purchased two rare watches from Defendants"; and on that same date, "at a face to face meeting in Phoenix, Arizona, Defendants agreed to accept as trade eighteen watches from Plaintiff.").) The modification agreement reached in 2011 was negotiated by Defendants and a third party negotiating on behalf of Cavan (*see* Doc. 24-1 at 2). It is not clear where these negotiations occurred. However, Cavan asserts that he executed the modification agreement in Arizona after it was faxed to him at his office in Scottsdale. (Doc. 24-1 at 2.) Cavan's assertion is consistent with the copy of the modification agreement provided by Defendants, which indicates it was faxed by Cavan from Arizona on December 20, 2011, most likely after Cavan signed the agreement and for the purpose of sending a signed copy to Maron. (*See* Doc. 19-1 (fax stamp indicating faxed on "12-

20-2011" at "14:16:33" hours, from "Cavan" at the fax number "480-747-9424").)

Although Maron states in his declaration that the agreement was reached and signed by both himself and Cavan at an "in-person meeting" in California, this is inconsistent with both the fax stamp on the agreement and Cavan's declaration that states Cavan signed the agreement at his office in Scottsdale. Further, Maron states in his declaration that at this same in-person meeting he delivered to Cavan the Patek 2499J (Doc. 18 at 2), which is inconsistent with the terms of the modification agreement, which state that the watch is to be delivered to Cavan on or before January 20, 2012 (Doc. 191).

Based on the allegations in the Complaint, the agreements, and the declarations of Moran and Cavan, the Court finds that the initial agreement was negotiated and executed in Arizona, and that the modification agreement was partially executed in Arizona.

As to place of performance, the eighteen watches were delivered by Cavan and accepted by Defendants in Arizona, and the parties indicate that the Patek 2449J was delivered in California. Thus, performance by Cavan occurred in Arizona and performance by Defendants occurred in California.

The Court rejects Defendants' suggestion that the Court look only to the modification agreement in determining whether California or Arizona has the most significant contacts. As noted, Cavan's performance under the initial agreement – the delivery of the eighteen watches and payment of $150,000 – became his performance under, and the primary consideration for, the modification agreement. Further, the contractual relationship between the parties began in Arizona with the initial agreement, which was negotiated and executed in Arizona, and the subsequent modification agreement flowed from and arose out of the initial agreement. Thus, the Court looks to both the initial agreement and the modification agreement in determining which state has the most significant contacts with the parties and the transactions.

Finally, as to the residence, place of incorporation, and place of business of the parties, according to the Complaint, Cavan is a citizen of Arizona; Moran is a citizen of California; and RMI is a California corporation with its principal place of business in

1 California.

2 The Court finds, based on these factors, that Arizona has the most significant
3 contacts. Accordingly, the Court will apply Arizona law.

**B.     Motion to Dismiss**

    **1.     Count I - Breach of Contract**

To maintain a claim for breach of contract, a plaintiff must demonstrate (1) the existence of a contract, (2) breach of the contract, and (3) resulting damages. *See Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004). Here, the Complaint alleges that both of the Defendants "materially breached the agreement to provide the Patek Ref 2499J by not providing the original dial and, instead, delivering the Inferior Substituted Watch to Plaintiff Cavan." (Doc. 1 at 5.) However, the agreements themselves demonstrate that the only parties to the agreements are RMI and Cavan. (Docs. 19 and 19-1.) The initial agreement is on what appears to be an invoice, which has across the top "Robert Maron, Inc., Important Wristwatches" and is signed by Maron. (Doc. 19.) The modification agreement is on what appears to be letterhead, with "Robert Maron, Important Wristwatches" across the top; is signed by "Robert Maron, President, Robert Maron, Inc."; and, on the bottom in small print the designation "Robert Maron, Inc." The agreements thus demonstrate that RMI entered a contract with Cavan.

Cavan contends that it was his understanding that he was negotiating with Maron both on Maron's behalf and on behalf of RMI, and that he trusted and relied on Maron and his expertise in entering the agreements. (Doc. 24 at 6-7; Doc. 24-1 at 2-3.) The allegations of the Complaint do not, however, demonstrate how or why Moran, who signed the initial agreement, which was on an RMI invoice, and who signed the modification agreement as president of RMI, would be responsible in his individual capacity for breaching the agreement. The Court will, accordingly, dismiss Moran from the breach of contract claim. Because Cavan may be able to correct the deficiencies in the claim, dismissal will be without prejudice and Cavan will be given leave to amend.

    **2.     Count II - Breach of Covenant of Good Faith and Fair Dealing**

"Arizona law recognizes that a party can breach the implied covenant of good faith and fair dealing both by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 435 (Ariz. Ct. App. 2002); *see Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986) ("The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.")

To state a claim for breach of the covenant of good faith and fair dealing against Moran, the Complaint must first demonstrate the existence of a contractual obligation on the part of Moran. *See Rawlings*, 726 P.2d at 569 ("The duty arises by virtue of a contractual relationship."). As discussed above, the Complaint does not include allegations demonstrating that Moran in his individual capacity was a party to, or otherwise can be held responsible for obligations owed under, the modification agreement. Accordingly, the Court will dismiss this claim as to Moran. However, as with the breach of contract claim, Cavan may be able to correct the deficiencies in the claim as to Moran. Therefore, dismissal will be without prejudice and Cavan will be given leave to amend.

As to RMI, a fair reading of the allegations in the Complaint demonstrates (1) that a contractual relationship existed between RMI and Cavan; (2) that RMI was obligated under the agreement to deliver the Patek 2449J with the original dial; (3) that RMI delivered the Patek 2449J with the wrong dial; (4) that RMI knew that it delivered a Patek 2449J with the wrong dial but did not inform Cavan that it had the wrong dial; and (5) that by delivering the Patek 2449J with the wrong dial, RMI either intended to injure Cavan or acted with reckless disregard as to such injury. The allegations demonstrate that RMI acted to impair the right of Cavan to receive the reasonably expected benefit of the agreement and are thus sufficient to state a claim for breach of the covenant of good faith and fair dealing as against RMI.

### 3. Count III – Breach of Fiduciary Duty

Defendants argue that the Complaint fails to state a claim for breach of fiduciary duty because Defendants did not owe Cavan a fiduciary duty.

Under Arizona law, a "fiduciary relationship is a confidential relationship whose attributes include 'great intimacy, disclosure of secrets, [or] intrusting of power." *Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 335 (Ariz. Ct. App. 1996) (citation and internal quotations omitted) (alteration in original). ). "Mere trust in another's competence or integrity does not suffice; 'peculiar reliance in the trustworthiness of another' is required." *Id.* (citation omitted). "In a fiduciary relationship, the fiduciary holds 'superiority of position' over the beneficiary. This superiority of position may be demonstrated in material aspects of the transaction at issue by a 'substitution of [the fiduciary's] will.'" *Id.* (citations omitted). Further, reliance on another's superior knowledge can establish a fiduciary relationship where "the knowledge is of a kind beyond the fair and reasonable reach of the alleged beneficiary and inaccessible to the alleged beneficiary through the exercise of reasonable diligence." *Id.* at 336.

The Complaint alleges that Defendants represented themselves to Cavan "as watch dealers with significant rare watch expertise, who acknowledged and accepted receipt of watches valued at $2,295,000.00 and $150,000 cash" from Cavan and that, therefore, "Defendants owed Plaintiff Cavan a fiduciary duty regarding the purchase of the Patek Ref 2449J." These allegations are insufficient to demonstrate that Defendants owed a fiduciary duty to Cavan. For example, there is no allegation in the Complaint of great intimacy, disclosure of secrets, or the entrusting of power; that Defendants' knowledge was superior to that of Cavan's; of the substitution of Defendants' will for that of Cavan; or that Defendants had superior knowledge "of a kind beyond the fair and reasonable reach" of Cavan and inaccessible to Cavan "through the exercise of reasonable diligence." *Standard Chartered*, 945 P.2d at 335-36. The Court will therefore dismiss the breach of fiduciary duty claim. However, because Cavan may be able to correct the

deficiencies in the claim, dismissal will be without prejudice and Cavan will be given leave to amend.

### 4. Counts IV and V – Negligent Misrepresentation and Fraud

Defendants argue that Cavan's Negligent Misrepresentation and Fraud claims are subject to dismissal because (1) the claims are barred by the respective statutes of limitations, and (2) the Complaint fails to plead the claims with the required specificity.

#### a. Statute of Limitations

In Arizona, the statute of limitations for fraud is three years, *see* A.R.S. § 12-543(3), and for negligent misrepresentation is two years, *Hullett v. Cousin*, 63 P.3d 1029, 1034 (Ariz. 2003) (citing A.R.S. § 12–542). The statute of limitations begins to run for both types of claims when the plaintiff knew or through reasonable diligence could have learned of the fraud or the misrepresentation. *Coronado Dev. Corp. v. Superior Court of Arizona In & For Cochise Cty.*, 678 P.2d 535, 537 (Ariz. Ct. App. 1984) (fraud); *Barnett v. Lincoln Nat. Life Ins. Co.*, 2014 WL 4259482, at *9 (D. Ariz. 2014) (negligent misrepresentation); *CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A., P.C.*, 7 P.3d 979, 982 (Ariz. Ct. App. 2000) ("Under the common law 'discovery rule,' 'a cause of action does not accrue until the plaintiff knows or with reasonable diligence should know the facts underlying the cause.'") (citations omitted). "The burden of establishing that the discovery rule applies to delay the statute of limitations rest[s] on plaintiff." *Logerquist v. Danforth*, 932 P.2d 281, 284 (Ariz. Ct. App. 1996).

As Defendants argue, the Complaint in this case shows that the misrepresentation and fraud claims would be barred without the benefit of the discovery rule because the allegations in the Complaint and the modification agreement indicate that the watch was delivered on or before January 20, 2012, more than three years before his action was filed on December 21, 2015. Thus, Cavan has the burden of demonstrating that the discovery rule applies.

Defendants argue that Cavan must plead facts in his complaint to demonstrate applicability of the discovery rule and that Cavan has failed to do so. Cavan responds by

1 pointing to paragraphs 21 and 22 of the Complaint and contends that he has met his
2 burden for application of the discovery rule based on these paragraphs. The Court
3 disagrees. These paragraphs merely state that in April 2015, "Plaintiff Cavan first
4 became aware that the [delivered watch] may not have the original dial, so Plaintiff
5 Cavan, at substantial expense, had the watch examined and evaluated by [a] watch
6 expert"; and that, in the expert's report of June 26, 2015, the expert "confirmed that the
7 original dial on the Patek Ref 2499J had been replaced with an inferior dial." (Doc. 1 at
8 4, ¶¶ 21, 22.) This is insufficient to demonstrate "(1) the time and manner of discovery
9 *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v.*
10 *Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 921 (Cal. 2005) (citations omitted) (emphasis
11 in original).

12 Cavan's declaration[5] does provide additional information, explaining why Cavan
13 did not discover that the watch did not have the original dial when he first received the
14 watch; why and when he first suspected that the watch did not have the original dial; and
15 how and when he confirmed that the watch did not have the original dial. (*See* Doc. 24-1
16 at 3-4.) The declaration does not, however, explain how Cavan exercised reasonable
17 diligence when he did not obtain an independent expert evaluation of the watch until
18 more than three years after he received the watch, particularly in light of his assertion that
19 he has "relatively limited expertise." (Doc. 24-1 at 3.)

20 In sum, Cavan has not met his burden of establishing applicability of the discovery
21 rule. The fraud and negligent misrepresentation claims will therefore be dismissed.
22 However, because Cavan may be able to amend the complaint to meet his burden,
23 dismissal will be without prejudice and Cavan will be given leave to amend.

24         **b.**    **Rule 9(b) Particularly Requirement**

25 Both negligent misrepresentation and fraud claims must be pled with particularity
26 under Federal Rule of Civil Procedure 9(b). *389 Orange St. Partners v. Arnold*, 179 F.3d

---

28 [5] For purposes of this pending motion to dismiss, the Court assumes, without deciding, that it can look outside the Complaint to determine whether Cavan has met his burden for application of the discovery rule.

656, 663 (9th Cir. 1999) (requiring state law claim for fraudulent concealment to be pled with particularity under Rule 9(b)); *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action."); *Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003) ("It is well established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements.").

Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). To meet this requirement, the circumstances constituting the alleged fraud must "be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) (citations and internal quotation marks omitted). The allegations must include "the who, what, when, where, and how" of the misconduct charged and "must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.*

Cavan contends that the Complaint meets the particularity requirement, citing paragraphs 20, 44, 51, 53, and 54 of the Complaint. These paragraphs state (1) that Maron represented to Cavan that Defendants would deliver to Cavan an original Patek 2499J valued at substantially over $2,000,000; (2) that Defendants delivered a Patek 2499J to Cavan that was not the Patek 2499J previously described to Cavan in that the original dial had been replaced with an inferior dial; (3) that Defendants knew that the Patek 2499J delivered to Cavan did not have the original dial; (4) that Defendants had replaced the original dial with an inferior dial in the hopes that Cavan would not discover that the delivered 2499J had the wrong dial. (Doc. 1 at ¶¶ 20, 44, 51, 53, 54.) Although the allegations provide details regarding the circumstances of the alleged fraud, missing from the Complaint are details regarding the when, where, and how the representation

- 11 -

1 was made by Maron that Defendants would deliver to Cavan an original Patek 2449J
2 valued at substantially more than $2,000,000.  Therefore, the Court will dismiss the fraud
3 and negligent misrepresentation claims for this additional reason.  However, because
4 Cavan may be able to correct this deficiency, dismissal will be without prejudice and
5 Cavan will be given leave to amend.

### c. **Punitive Damages**

Defendants argue that the allegations in the Complaint are insufficient to create an entitlement to punitive damages.  It is the Court's policy to resolve the issue of the propriety of punitive damages through the resolution of objections to jury instructions and/or through the resolution of a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50.  Therefore, the Court will deny without prejudice dismissal of the request for punitive damages.

### 5. **Count VI – Unjust Enrichment**

Defendants argue that the unjust enrichment claim is barred by a two-year statute of limitations.  Cavan argues that a three-year statute of limitations applies to his unjust enrichment claim.  (*See* Doc. 24 at 10-11 (citing A.R. S. § 12-543(1).)

There appears to be a conflict in Arizona as to the length of the limitations period for an unjust enrichment claim, with some cases citing A.R.S. § 12-550 for a four-year limitations period, and other cases citing A.R.S. § 12-543(1) for a three-year limitations period.  *See, e.g., Rzendzian v. Marshall & Ilsley Bank*, 2014 WL 3610897, at *4 (Ariz. Ct. App. 2014) (citing § 12-550 for four years); *San Manuel Copper Corp. v. Redmond*, 445 P.2d 162, 166 (Ariz. Ct. App. 1968) (same); *Costanzo v. Stewart*, 453 P.2d 526, 529 (Ariz. Ct. App. 1969) (citing A.R.S. § 12-543 for three years); *see also Atkins v. Calypso Sys., Inc.,* 2015 WL 5856881, at *9 (D. Ariz. 2015) (recognizing that the limitations period is three or four years).  The Court will assume that Cavan is correct and that the limitations period is three years.

Cavan does not deny that he filed this action more than three years after he received the watch, but argues that the statute of limitations was tolled until he

1  discovered that the watch did not have the original dial.  The Court agrees that the
2  discovery rule may apply to Cavan's unjust enrichment claim, which alleges that
3  Defendants switched the dial on the watch in the hopes that Cavan would not discover
4  that the watch did not have the original dial.  *See Rzendzian v. Marshall & Ilsley Bank*,
5  2014 WL 3610897, at *4 (Ariz. Ct. App. 2014) (applying discovery rule to unjust
6  enrichment claim); *see also Mohave Elec. Co-op., Inc. v. Byers*, 189 Ariz. 292, 310, 942
7  P.2d 451, 469 (Ct. App. 1997) ("Generally, wrongful concealment will toll the Statute of
8  Limitations.") (citing *Ulibarri v. Gerstenberger*, 178 Ariz. 151, 159, 871 P.2d 698, 706,
9  (App.1994)).  However, as noted above, Cavan has not met his burden of establishing
10 applicability of the discovery rule.  Because Cavan may be able to amend the complaint
11 to meet his burden, dismissal will be without prejudice and Cavan will be given leave to
12 amend.

13 **C.    Motion to File under Seal**

14     Defendants move to file the initial agreement and modification agreement under
15 seal.  The Court will deny the motion.

16     There is a strong presumption in favor of public access to papers filed in the
17 district court.  *See Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995).  A party
18 seeking to file materials under seal bears the burden of overcoming that presumption by
19 showing that the materials are deserving of confidentiality.  *See Foltz v. State Farm Mut.*
20 *Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2005).  Specifically, a party must "articulate
21 compelling reasons supported by specific factual findings that outweigh the general
22 history of access and the public policies favoring disclosure."  *Kamakana, City and*
23 *County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (internal citations omitted).

24     Here, Defendants make only general assertions that the agreements contain "terms
25 of business that are proprietary to RMI" that "RMI uses in carrying out its business," and
26 that the public disclosure of the agreements could "potentially harm RMI" and be
27 "damaging to RMI."  Moreover, although the modification agreement does state that the
28 terms of the "settlement" agreement are to be kept confidential, the initial agreement

1  contains no indication that it was to be kept confidential.

2      Neither Defendants' general assertions nor the terms of the agreements themselves
3  overcome the presumption in favor of public access to court documents. (Doc. 17 at 3;
4  Doc. 18 at 2-3.) Accordingly, Defendants' motion to file under seal will be denied.

5      IT IS ORDERED that Defendants' Motion to Dismiss Counts I through VI of
6  Plaintiff's Complaint for Failure to State a Claim Pursuant to Rule 12(b)(6) and 9(b)
7  (Doc. 15) is granted in part and denied in part as follows:

8          The breach of contract and breach of the covenant of good faith and fair
9          dealing claims against Moran are dismissed without prejudice and with leave to
10         amend.

11         The breach of fiduciary duty, negligent misrepresentation, fraud, and unjust
12         enrichment claims against Moran and RMI are dismissed without prejudice and
13         with leave to amend.

14         The Motion to Dismiss is otherwise denied.

15     IT IS FURTHER ORDERED that Plaintiff may file an amended complaint no
16 later than May 13, 2016.

17     IT IS FURTHER ORDERED that Defendant's Request for Judicial Notice in
18 Support of Motion to Dismiss (Doc. 16) is granted.

19     IT IS FURTHER ORDERED that the Motion for Authorization to File Exhibits to
20 Maron Declaration Under Seal (Doc. 17) is denied.

21     IT IS FURTHER ORDERED that the Clerk of the Court shall unseal and file
22 Exhibits A and B to Maron Declaration (Doc. 19, Doc. 19-1).

23     Dated this 25th day of April, 2016.

Paul G. Rosenblatt
United States District Judge