**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David v. Cavan,<br><br>        Plaintiff,<br><br>    vs.<br><br>Robert Maron, et al.,<br><br>        Defendants. | No. CV-15-02586-PHX-PGR<br><br>ORDER |

Among the motions pending before the Court is Defendants' Motion to Dismiss Counts I Through VI of Plaintiff's Amended Complaint for Failure to State a Claim Pursuant to Rule 12(b)(6) and 9(b) (Doc. 32).   Having considered the parties' memoranda, the Court finds that the motion should be granted in part and denied in part.[1]

Background

According to the Amended Civil Complaint ("Amended Complaint") (Doc. 31),

---

1

    While the defendants have asked for oral argument on the motion to dismiss, the Court finds that oral argument would not significantly aid the resolution of the motion.
    The Court notes that it has intentionally not discussed every argument raised by the parties and that those arguments not discussed were considered by the Court to be unnecessary to its resolution of the motion to dismiss.

the plaintiff, David Cavan, and the defendants, Robert Maron and Robert Maron, Inc., entered into an agreement in July 2007 (the "initial agreement") under which the plaintiff agreed to purchase two rare watches from the defendants: a Patek Philippe Ref 3449 ("Patek 3449") for $1,800,000; and a Patek Philippe Ref 2523 ("Patek 2523") for $2,100,000; and the defendants agreed to accept eighteen watches owned by the plaintiff, valued at $2,295,000, to be credited towards the purchase price of the two rare watches. The defendants subsequently provided an additional discount of $150,000 towards the purchase price of the two watches and the plaintiff made an additional payment of $150,000. This left the remaining balance due from the plaintiff towards the purchase of the two rare watches at $1,304,000 as of September 2010.

The defendants did not deliver either the Patek 3449 or the Patek 2523 to the plaintiff and he alleges that the defendants sold one or both of these watches to another purchaser.  In October 2011, the plaintiff requested that the defendants return to him the eighteen watches and his $150,000 payment.

In December 2011, as a result of negotiations through watch broker John Young who was representing the plaintiff, the parties entered into a written agreement to modify the initial 2007 agreement ("the modification agreement"); the modification agreement states that it superseded the original agreement.  In the negotiations leading up to the modification agreement, Robert Maron told the plaintiff and John Young that the defendants had a different rare watch, a Patek Philippe Ref 2499J ("Patek 2499J") worth more than $2,000,000. Pursuant to the modification agreement, the plaintiff was to receive a "Patek Philippe Ref 2499J 18K 1st Series watch No. 868244/665011," rather than the Patek 3449 and the Patek 2523, in consideration for the eighteen watches and the $150,000 that the plaintiff had

1    previously delivered to the defendants; the Patek 2499J was to be delivered to the

2    plaintiff on or before January 20, 2012.

3         Several days after the modification agreement was signed, the defendants

4    delivered to the plaintiff a Patek 2499J. In April 2015, the plaintiff first became aware

5    that the Patek 2499J may have been sold to him without its original dial; this

6    awareness occurred when he considered selling the watch and had it examined by

7    experts at an auction house who questioned the authenticity of the watch's dial but

8    could not determine definitively that the original dial had been replaced.  The plaintiff

9    then had the watch examined by Eric Tortella, a world renowned watch expert, who

10   confirmed in a report that the original dial on the Patek 2499J had been replaced

11   with an inferior dial; Tortella further informed the plaintiff that the Patek 2499J with

12   the replaced dial was worth significantly less that the watch with its original dial.

13        In September 2015, the plaintiff had watch broker John Young contact the

14   defendants on his behalf. The broker informed the defendants that the Patek 2499J

15   did not have the original Patek 2499J dial.  Robert Maron told the broker that he

16   (Maron) was not sure what had happened but that he (Maron) would "take care of

17   it" and replace the dial on the delivered watch with the original Patek 2499J watch

18   dial.  In November 2015, Maron admitted he had switched the dial and, again,

19   acknowledged he and Robert Maron, Inc. were responsible for delivering the original

20   Patek 2499J dial to the plaintiff and promised to do so.  The defendants did not

21   deliver the original Patek 2499J dial to the plaintiff and have not returned the

22   plaintiff's eighteen watches or returned any money to the plaintiff.

23        The plaintiff commenced this action against the defendants on December 21,

24   2015, four years after he had received the Patek 2499J.  In response to the

25   defendants' motion to dismiss the original complaint, the Court entered an order on

26

April 26, 2016 (Doc. 28) that granted the motion in part and denied it in part with leave to amend.  The plaintiff filed his Amended Complaint on May 11, 2016, wherein he alleges claims for Breach of Contract (Count I), Breach of the Covenant of Good Faith and Fair Dealing (Count II), Breach of Fiduciary Duty (Count III), Negligent Misrepresentation (Count IV), Fraud (Count V), and Unjust Enrichment (Count VI).  The defendants filed their pending motion to dismiss the entirety of the Amended Complaint on May 25, 2016.

Discussion

Although Arizona's substantive law governs all of the claims in the plaintiff's Amended Complaint, the Federal Rules of Civil Procedure govern the sufficiency of the Amended Complaint for purposes of the motion to dismiss. <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1102 (9th Cir.2003) ("The Federal Rules of Civil Procedure apply irrespective of the source of subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal."); <u>Dunbar v. Wells Fargo Bank, NA</u>, 709 F.3d 1254, 1257 (8th Cir.2013) ("In a diversity suit ... we apply federal pleading standards - Rules 8 and 12(b)(6) - to the state substantive law to determine if a complaint makes out a claim under state law.") (internal brackets and quotation marks omitted).

A. All Claims

The defendants, in an argument that was not raised in their original motion to dismiss, initially argue that all of the claims in the Amended Complaint must be dismissed because the allegations of damages are purely speculative.  When ruling on a motion to dismiss, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1072 (9th Cir. 2005).  Applying that standard

here, the Court concludes that the plaintiff has adequately alleged that he was damaged because the original dial on the Patek 2499J he received pursuant to the modification agreement had been replaced by an inferior dial and that his expert, Eric Tortella, had informed him that the watch with the replaced dial is worth significantly less than it would be if it had the original dial.  Whether the substituted dial actually adversely affects the value of the watch is not a matter to be determined on a motion to dismiss.

B. Breach of Contract Claim

The gist of the plaintiff's breach of contract claim is that the defendants materially breached the modification agreement by not providing the Patek 2499J with its original dial but rather with an inferior substituted dial.  The defendants, in another argument that was not raised in their original motion to dismiss, argue in part that Count I must be dismissed for failure to state a claim because the Amended Complaint fails to allege that any express terms of the modification agreement were breached.  The defendants contend that all the modification agreement required was the delivery of a Patek 2499J with movement 868244 and case 665011 and that was what was delivered to the plaintiff and that the agreement did not state that the Patek watch could not be modified.

The Court concludes that Count I states a claim for breach of contract. The fact that the modification agreement did not expressly state that the Patek 2499J could not be in a modified condition is not dispositive of this issue.  Under Arizona law, a contract must be read in light of what the parties  intended, and "[t]he intention or meaning in a contract may be manifested either expressly or impliedly, and it is fundamental that terms which are plainly or necessarily implied in the language of a contract are as much a part of it as those which are expressed." Demand v. Foley,

463 P.2d 851, 856 (Ariz.App.1970); *accord*, Zancanaro v. Cross, 339 P.2d 746, 749 (Ariz.1959) ("An implied promise arising out of the expressed provisions of the contract is as much a part of the contract as a written one, and is subject to the same penalties for breach.") The Court, drawing on its judicial experience and common sense, Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), as well as drawing the reasonable inferences from the Amended Complaint in the plaintiff's favor, concludes that the plaintiff has plausibly pleaded that the parties intended that the rare watch that the plaintiff purchased, which was valued at more than $2,000,000, would have all of its original parts absent a disclosure to the contrary.[2]

C. Alter Ego Allegations

The defendants also argue that the breach of contract claim in Count I and the breach of the covenant of good faith and fair dealing claim in Count II must be dismissed as to Robert Maron for failure to state a claim because the Amended Complaint fails to adequately allege that defendant Robert Maron, Inc. is the alter ego of Robert Maron.  In its previous order resolving the original motion to dismiss, the Court dismissed Robert Maron from Counts I and II because the parties' contracts, on their faces, were solely between the plaintiff and Robert Maron, Inc. and the plaintiff had not sufficiently alleged alter ego liability.  The defendants argue, and the Court agrees, that the alter ego-related allegations added to the Amended Complaint are still insufficient to make Robert Maron liable in his individual capacity for any breach of the modification agreement by Robert Maron, Inc.

In order to survive the motion to dismiss as to this issue, the plaintiff must do

---

[2]

This is in accordance with the Court's statement in its order resolving the defendants' motion to dismiss the original complaint that a fair reading of that complaint demonstrated that defendant Robert Maron, Inc. was obligated under the agreement to deliver the Patek 2499J with the original dial.

more than give the defendants fair notice of his claim of alter ego liability; he must also allege sufficient facts, accepted as true, that show a right to relief against Robert Maron on alter ego grounds that rises above a speculative level, *i.e.*, one that is plausible on its face. Iqbal, 556 U.S. at 678.  In order to meet this standard, the allegations in the Amended Complaint related to Robert Maron's liability must contain sufficient factual content that allows the Court to draw the reasonable inference that Maron is liable under Arizona law for the breach of contract-related claims.  If the alleged facts are only consistent with Maron's liability, then the allegations against him are not plausible. *Id.*

It is a basic axiom of Arizona corporate law that since a corporation is a separate entity, the personal assets of a corporate officer may not normally be reached to satisfy corporate liabilities. Loiselle v. Cosas Management Group, LLC, 228 P.3d 943, 950 (Ariz.App.2010).  "A corporate entity will be disregarded, and the corporate veil pierced, only of there is sufficient evidence that 1) the corporation is the alter ego or business conduit of a person, and 2) disregarding the corporation's separate legal status is necessary to prevent injustice or fraud." *Id.* (internal citations and quotation marks omitted).  Under the first factor, in order for an alter ego status to exist there must be such unity of interest and ownership that the separate personalities of the corporation and its owners cease to exist, but the corporate form is not to be disregarded and the owners should not be personally liable if there is no unification of interests and intermingling of funds such that the corporation has lost its separate identity. Dietel v. Day, 492 P.2d 455, 457 (Ariz.App.1972).

Paragraphs 6 and 7 of the Amended Complaint contains the following alter ego allegations:

> 6. On information and belief, Defendant Maron and Defendant RMI [Robert Maron, Inc.] are the alter ego of

each other, by reason of the following:

A. At all times herein mentioned, Defendant Maron is and was the sole owner of Defendant RMI and dominated, influenced and controlled the business, property and affairs of Defendant RMI;

B. At all times herein mentioned, there existed a unity of interest between Defendant Maron and Defendant RMI such that their separateness and individuality have ceased;

C. At all times herein mentioned, Defendant RMI is and was a mere shell and naked framework which Defendant Maron used as a conduit for the conduct of his personal business, property and affairs;

D. Defendant RMI was created and continued by Defendant Maron pursuant to a fraudulent plan, scheme and device conceived and operated by Defendant Maron whereby the income, revenue and profits of Defendant RMI were diverted to Defendant Maron, himself;

E. At all times herein mentioned, Defendant RMI was organized by Defendant Maron as a device to avoid individual liability and for the purpose of substituting a financially irresponsible corporation in place and stead of Defendant Maron and, accordingly, Defendant RMI was formed with capitalization totally inadequate for the business in which Defendant RMI was engaged; and,

F. At all times herein mentioned, Defendant RMI is and was insolvent.

7. On information and belief, by virtue of the foregoing allegations and further allegations contained herein, adherence to the fiction of a separate existence between Defendant Maron and Defendant RMI would, under the circumstances, sanction fraud and promote injustice in that Plaintiff Cavan would be unable to realize any judgment against Defendant RMI and in favor of Plaintiff Cavan.

The Court agrees with the defendants that the allegations in ¶ 6 and ¶ 7, which are all made on "information and belief," are in effect factually unsupported conclusions that merely recite factors that courts use in evaluating alter ego claims.

As is now clear, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds for his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation, quotation marks and brackets omitted).  What is missing are any factual allegations showing that the defendants intermingled their corporate and personal assets, affairs or funds, that the corporate structure was in any used for other than legitimate corporate purposes, or that observance of corporate form would sanction a fraud. See Dietel v. Day, 492 P.2d at 458.  Furthermore, the fact that Maron is the sole owner of the corporate defendant is an insufficient basis on which to invoke alter ego liability. Ize Nantan Bagowa, Ltd. v. Scalia, 577 P.2d 725, 728 (Ariz.App.1978) ("[T]he mere fact that it is a one-man corporation does not mean the corporation is the alter ego of that one man.")  Also insufficient to show that alter ego liability should be imposed is the allegation, even if factually supported which it is not, that Robert Maron, Inc. was undercapitalized and is now insolvent. Id. at 729 (Court stated that undercapitalization cannot be proved merely by showing that a corporation is now insolvent, and in any case, undercapitalization is not an absolute ground for disregarding a corporate entity in the absence of fraud or injustice.)  Moreover, even if the plaintiff did not receive the benefit of his bargain under the modification agreement, "that alone does not constitute any evidence of fraudulent conduct and it is not sufficient to justify disregarding the corporate entity." Dietel, at 458.

Because the Court has already permitted the plaintiff to amend his alter ego allegations after pointing out their deficiencies and the plaintiff has been unable to properly do so, the Court concludes that Robert Maron should be dismissed from

1  Counts I and II of the Amended Complaint without leave to amend. *See* Wagh v.

2  Metris Direct, Inc., 363 F.3d 821, 830 (9th Cir.2003) ("The district court's discretion

3  to deny leave to amend is particularly broad where the plaintiff has previously filed

4  an amended complaint.")(*overruled on other grounds*); Chodos v. West Publishing

5  Co., 292 F.3d 992, 1003 (9th Cir.2002) (same).

6  D. Breach of Fiduciary Duty Allegations

7      The defendants also argue that the plaintiff's breach of fiduciary duty claim

8  must be dismissed because the allegations in the Amended Complaint are

9  insufficient to plausibly plead that the defendants owed a fiduciary duty to the

10  plaintiff.  In its previous order, the Court dismissed the breach of fiduciary duty claim

11  in the original complaint for that very reason. In doing so, the Court noted, for

12  example, that there were no factual allegations of great intimacy, disclosure of

13  secrets, or the entrusting of power, that the defendants' knowledge was superior to

14  that of the plaintiff's, that the defendants substituted their will for that of the plaintiff,

15  or that the defendants had superior knowledge of a kind beyond the fair and

16  reasonable reach of the plaintiff and inaccessible to the plaintiff through the exercise

17  of reasonable diligence.  The Court agrees with the defendants that the allegations

18  added in the Amended Complaint do not overcome the deficiencies previously found

19  by the Court.

20      Arizona law "distinguishes a fiduciary relationship from an arm's length

21  relationship." Standard Chartered PLC v. Price Waterhouse, 945 P.2d 317, 335

22  (Ariz.App.1996).   A fiduciary relationship is a "confidential relationship whose

23  attributes include great intimacy, disclosure of secrets, or intrusting of power" and

24  is one in which the fiduciary "holds superiority of position over the beneficiary" which

25  is "demonstrated in material aspects of the transaction at issue by a substitution of

26

the fiduciary's will" over that of the other party. *Id.* (internal brackets and quotation marks omitted).  The "mere trust in another's competence or integrity does not suffice" since what is required is the "peculiar reliance in the trustworthiness of another." *Id.*  For these reasons, commercial transactions generally "do not create a fiduciary relationship unless one party agrees to serve in a fiduciary capacity." Cook v. Orkin Exterminating Co., 258 P.3d 149, 152 (Ariz.App.2011).

The plaintiff alleges in ¶ 36 in his Amended Complaint that the defendants owed him a fiduciary duty for the following reasons:

> A. Defendants were watch dealers with many years of experience buying and selling rare watches with significant watch expertise and knowledge. Such expertise and superior knowledge possessed by Defendants was of a kind and nature beyond the fair and reasonable reach of Plaintiff Cavan, who, as a non-professional watch collector, did not and could not obtain such expertise and knowledge through the exercise of reasonable diligence. ... Plaintiff Cavan lacked the expertise and superior knowledge to determine whether the Patek Ref 2499J that was delivered had the original dial and, based on their ongoing business relationship and Defendants' representations regarding rare watch expertise, reasonably relied on Defendants expertise and superior knowledge to assure that the watch delivered had its original parts, including the original dial; and;
> B. Plaintiff had a particular reliance in the trustworthiness of Defendants, based on their ongoing business relationship and the representations of Defendant Maron, on behalf of himself and Defendant RMI, that Plaintiff Cavan should place his trust in Defendants because they were watch dealers with significant rare watch expertise and knowledge, dealing only with authentic superior quality rare watches. This ongoing business relationship and representations created a relationship of great intimacy and trust.

The Court is unpersuaded that these essentially conclusory allegations contain sufficient factual enhancement necessary to make a fiduciary relationship plausible here, as opposed to a mere possibility. Iqbal, 556 U.S. at 678. The fact that the defendants had more specialized knowledge about rare watches than the plaintiff

- 11 -

is not dispositive since "[t]he law does not create a fiduciary relation in every business transaction involving one party with greater knowledge, skill or training, but requires peculiar intimacy or an express agreement to serve as a fiduciary." Cook, 258 P.3d at 152.  The plaintiff has not sufficiently alleged that the defendants expressly consented to be his fiduciary, and the particular circumstances that he has alleged, including his trust in their expertise, is not sufficient to change this arms-length commercial transaction into a fiduciary relationship. Id.  See Silaev v. Swiss-America Trading Corp., 2015 WL 1469739, at *3 (D.Ariz. March 31, 2015) (Court dismissed a breach of fiduciary duty claim for failure to state a claim because the plaintiff's allegations were insufficient to turn an arm's length commercial contract to buy and sell gold and silver coins into a fiduciary relationship notwithstanding the plaintiff's alleged placement of significant trust and confidence in the defendant due to its expertise in the coin industry.)

Because the Court has already permitted the plaintiff to amend his fiduciary relationship allegations after pointing out their deficiencies and the plaintiff has been unable to properly do so, the Court concludes Count III of the Amended Complaint should be dismissed without leave to amend.

D. Statute of Limitations

The defendants further argue that all of the claims in the Amended Complaint, with the exception of the breach of contract claim, should be dismissed as time-barred.  It is undisputed that these claims are governed by statutes of limitations of either two or three years, and that the plaintiff did not commence this action until four years after he received the Patek 2499J.  The gist of the plaintiff's argument as to the statute of limitations issue is that the discovery rule operates to shield him from any limitations defense, that he has set forth sufficient information in the Amended

Complaint to invoke the discovery rule, and that the issue is in any case a factual one that cannot be decided on a motion to dismiss.  In its previous order, the Court concluded that the plaintiff had failed to plead sufficient facts in his original complaint to demonstrate the applicability of the discovery rule.

Under the discovery rule, which is an exception to the general rule that a claim accrues, and the limitations period commences, when one party is able to sue another, "a cause of action does not accrue until the plaintiff knows or with reasonable diligence should know the facts underlying the cause." <u>Doe v. Roe</u>, 955 P.2d 951, 960 (Ariz.1998).  Arizona applies the discovery rule to both contract and tort claims. <u>Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of America</u>, 898 P.2d 964, 968-69 (Ariz.1995).

The issue as to the plaintiff's invocation of the discovery rule is whether the non-conclusory factual content alleged in his Amended Complaint, together with the reasonable inferences from that content, plausibly suggests that the plaintiff was reasonably diligent in determining that the Patek 2499J the defendants sold him through the modification agreement had an inferior substituted dial.  The plaintiff contends that he has sufficiently alleged in the Amended Complaint that he did not reasonably learn of the facts underlying the defendants' wrongful conduct until September 2015, which was approximately three months before this action was commenced.  His contention is based on ¶ 19 and ¶ 21 of the Amended Complaint, which state:

> 19. Plaintiff Cavan examined the Inferior Substituted Watch upon receipt but did not, and could not, detect that the original dial had been replaced with an inferior dial. Only a watch expert with extensive experience is able to make that determination. Plaintiff Cavan had no reason to believe that the original dial had been replaced and no reason to have the watch inspected by an expert. While Plaintiff Cavan was not a watch expert capable of

determining that the original dial had been replaced, he had purchased many rare watches, including the Eighteen Watches over a period of several years. Plaintiff Cavan had never previously been involved in a situation, or even heard of a situation, where any original components of a rare watch had been replaced without full disclosure. Based on his years of experience purchasing rare watches, Plaintiff Cavan understood at all times mentioned herein, and understands now, that removing original parts would significantly reduce the value of the rare watch, and would be outrageous and fraudulent conduct that was extremely unlikely when dealing with reputable watch dealers. Plaintiff Cavan had no reason to believe that Defendants would partake in such fraudulent conduct. In addition, Defendant Maron told Plaintiff Cavan that he had extensive experience in buying and selling rare watches and could be trusted and relied upon, and Plaintiff Cavan reasonably relied on those representations. Such reliance was increased by the fact that Defendant Maron was introduced to Plaintiff Cavan by John Young, with whom Plaintiff Cavan had done business with for many years.
* * *

21. In April 2015, Plaintiff first became aware that the Inferior Substituted Watch may not have the original dial, when he considered selling the watch and showed the watch to Saori Omura, a watch dealer with the Antiquorum Auction House ("Antiquorum"). John Young and Saori Omura were both at the meeting where Plaintiff Cavan assigned the watch to Antiquorum and, despite many years of rare watch sales between them, neither was able to determine that the dial had been switched. However, shortly thereafter, Antiquorum watch experts questioned the authenticity of the dial, but could not determine definitively that the original dial had been replaced. Therefore, Plaintiff Cavan, at substantial expense, had the watch examined and evaluated by a world renowned watch expert, Eric Tortella. In his written report, dated June 26, 2015, Eric Tortella confirmed that the original dial on the Patek Ref 2499J had been replaced with an inferior dial. Eric Tortella further informed Plaintiff Cavan that the Inferior Substituted Watch with the replaced dial is worth significantly less than the promised Patek Ref 2499J with the original dial.

The Court noted in its previous order that the original complaint, even as

supplemented with a declaration that the plaintiff' attached to his response to the first

motion to dismiss that added information explaining why the plaintiff did not discover

that the watch did not have its original dial when he first received the watch, failed to explain how the plaintiff "exercised reasonable diligence when he did not obtain independent expert evaluation of the watch until more than three years after he received the watch, particularly in light of his assertion that he has 'relatively limited experience.'" The Court agrees with the defendants that the allegations added to the Amended Complaint, which are in effect the statements in the plaintiff's previous declaration which the Court has already concluded were insufficient, fail to plausibly establish the applicability of the discovery rule.

The plaintiff's attempt to argue around the discovery rule's reasonable diligence requirement by emphasizing that he did not have the expertise at the time he received the Patek 2499J to determine that its original dial had been switched is unpersuasive. Because the discovery rule favors the plaintiff who remains unaware of a cause of action despite his best efforts, a component of that rule charges the plaintiff "with a duty to investigate with due diligence to discover the necessary facts." Doe, 955 P.2d at 962; *accord,* Elm Retirement Center, LP v. Callaway, 246 P.3d 938, 941 (Ariz.App.2010) ("The discovery rule, however, does not permit a party to hide behind its ignorance when reasonable investigation would have alerted it to the claims.") While the discovery rule does not require the plaintiff himself to have the expertise to understand that the watch did not have its original dial, it does require him to be reasonably diligent in finding someone with that expertise who could help him evaluate the watch, as he eventually did. Use of the discovery rule is not appropriate here to extend the applicable limitations periods because the facts alleged in the Amended Complaint do not plausibly show that the plaintiff's claims could not reasonably have been discovered within the limitations periods. As the defendants note, the difference in the Patek 2499J dials found by the plaintiff's

expert in April 2015 could just as easily have been found at anytime prior to the expiration of the limitations periods given that the plaintiff has not alleged that the defendants obscured the dial or actively prevented him from learning of the substituted dial.[3]

Because the Court has already permitted the plaintiff to amend his discovery rule-related allegations after pointing out their deficiencies and the plaintiff has been unable to properly do so, the Court concludes that Counts II through VI of the Amended Complaint should be dismissed as time-barred without leave to amend. Therefore,

IT IS ORDERED that Defendants' Request for Judicial Notice in Support of Motion to Dismiss Amended Complaint (Doc. 33) is granted.[4]

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Counts I Through VI of Plaintiff's Amended Complaint for Failure to State a Claim Pursuant to Rule 12(b)(6) and Rule 9(b) (Doc. 32) is granted in part and denied in part. The motion to dismiss is granted to the extent that Count II (Breach of Covenant of Good

---

[3]

To the extent that the plaintiff is attempting to raise an equitable tolling or equitable estoppel argument to stay the running of the limitations periods, the Court rejects such an argument because the plaintiff has not alleged any facts plausibly showing any affirmative acts on the part of the defendants related to the substitution of the watch dial that prevented the plaintiff from timely discovering the substitution or affirmatively inducing him not to file suit. The fact that the defendants never told the plaintiff that the Patek 2499J would not be delivered with its original dial, *see* ¶ 20 of the Amended Complaint, constitutes at best only a passive concealment which, absent a fiduciary duty to disclose that fact to the plaintiff which did not exist here, is insufficient under Arizona law to toll the running of the limitations periods.

[4]

The Court notes that the exhibits attached to Robert Maron's declaration had no effect on the Court's resolution of the motion to dismiss.

Faith and Fair Dealing), Count III (Breach of Fiduciary Duty), Count IV (Negligent Misrepresentation), Count V (Fraud), and Count VI (Unjust Enrichment) of the Amended Civil Complaint (Doc. 31) are all dismissed in their entirety without leave to amend, and to the extent that the Breach of Contract claim in Count I of the Amended Civil Complaint against defendant Robert Maron is also dismissed without leave to amend.  The motion to dismiss is denied as to the Breach of Contract claim in Count I of the Amended Civil Complaint against Robert Maron, Inc.

IT IS FURTHER ORDERED that the caption of all future documents filed by the plaintiff shall comply with the party name capitalization rule of LRCiv 7.1(a)(3).

DATED this 22nd day of August, 2016.

Paul G. Rosenblatt
United States District Judge